# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

SIDNEY REYNOLDS, :

                Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:09-cv-35

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g), as incorporated into 42 U.S.C. §1383(c)(3), for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for supplemental security income SSI benefits (SSI), a claimant must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. §1381a. With respect to the present case, eligibility is dependent upon disability, income, and other financial resources. 42 U.S.C. §1382(a). To establish disability, a claimant must show that the claimant is suffering from a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §1382c(a)(A). A claimant must also show that the impairment precludes performance of the claimant's former job or any other substantial gainful work which exists in the national economy in significant numbers. 42 U.S.C. §1382c(a)(3)(B). Regardless of the actual or alleged onset of disability, an SSI claimant is not entitled to SSI benefits

prior to the date that the claimant files an SSI application. *See,* 20 C.F.R. §416.335.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1 . If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSI on July 27, 2004, alleging disability from January 1, 2001, due to asthma, high blood pressure, hepatitis C, obesity, reflux, ulcers, bursitis, memory loss, and depression. (Tr. 61-64; 776). Plaintiff's application was denied initially and on reconsideration. (Tr. 46-48; 50-52). A hearing was held before Administrative Law Judge Thomas McNichols at which time Plaintiff amended his onset date to January 27, 2003. (Tr. 577-610). Judge McNichols subsequently determined that Plaintiff is not disabled. (Tr. 18-38). The Appeals Council denied Plaintiff's request for review, (Tr. 6-9), and Judge McNichols' decision became the

Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge McNichols found that Plaintiff has severe obstructive pulmonary disease with continued smoking against medical advice, bronchial asthma and sinusitis, obesity, chronic polysubstance abuse (heroine, cocaine, illicit Methadone, and marijuana), and possible mood disorder secondary to substance abuse, but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 24, ¶ 2; Tr. 30, ¶ 3). Judge McNichols also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. *Id.,* ¶ 4. Judge McNichols then used sections 203.14 (ages 55-59 and high school equivalent education) and 203.06 (ages 60-64 and high school equivalent education) or if he does not have a GED but a limited education, sections 203.11 (ages 55-59) and 203.03 (ages 60-64), as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 37, ¶ 9). Judge McNichols concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 38).

The record contains Plaintiff's treatment notes from the Rockview State Correctional Institution dated January, 2002, through July 9, 2004. (Tr. 181-287). A review of those records reveals that during that period of time, Plaintiff was treated by various health care providers at that facility for several medical conditions and complaints including hypertension, breathing problems, obesity, and gout. *Id.*

Examining physician Dr. Danopulos reported on September 15, 2004, that Plaintiff complained of effort-related shortness of breath, hepatitis, hypertension, bilateral shoulder pain, acid reflux disease with stomach ulcers, gout, low back pain, and being overweight. (Tr. 288-96). Dr.

4

Danopulos also reported that Plaintiff quit smoking two weeks prior to the examination, had a tenth grade education, his lungs were clear to auscultation, his chest excursions were diminished but expiration was not prolonged, his heart tones were normal, and that his abdomen was soft but his epigastrium was painful by palpation. *Id.* Dr. Danopulos noted that Plaintiff had full ranges of motion of his lower extremities, both of his shoulders revealed painful and restricted motions, he had an unsteady gait helped by a cane although the cane was not obligatory, straight leg raising triggered pain at seventy degrees, squatting and arising from a squat triggered lumbosacral pain, lumbosacral motions triggered pain, and that he could not toe and heel walk. *Id.* Dr. Danopulos also noted that there was no evidence of nerve root compression or peripheral neuropathy, his blood pressure was 165/100, his neurological examination was normal, and he was 69½ inches tall and weighed 326 pounds. *Id.* Dr. Danopulos opined that the objective findings were restrictive lung disease triggered by his morbid obesity, hepatitis C which is going to be treated properly, poorly controlled hypertension, rule out bilateral shoulder arthritis, history of acid reflux disease with painful epigastrium by palpation, lumbar spine arthritis, and morbid obesity. *Id.* Dr. Danopulos also opined that Plaintiff's ability to do any work-related activities was restricted from the combination of his restrictive lung disease which was triggered by his morbid obesity, bilateral shoulder and lumbar spine arthritis, poorly controlled hypertension, and hepatitis C. *Id.*

Examining psychologist Dr. Flexman reported on September 29, 2004, that Plaintiff had a ninth grade education, was markedly obese, had a slumped posture and a gait disturbance due to his obesity, used a cane, and that his facial expressions revealed a decrease in variability. (Tr. 297-300). Dr. Flexman also reported that Plaintiff's speech was appropriate, he did not exhibit overt pain behavior, was evasive and unmotivated during the evaluation with low energy level, and that

his affect was appropriate. *Id.* Dr. Flexman noted that Plaintiff reported his mood "doesn't feel good", he was oriented, his attention span and concentration were poor as was his effort, his response style was suboptimal, his reliability was poor and suggested significant malingering, his intellectual functioning appeared to be below average, his recent and remote memory was poor with poor effort, and his judgment was fair. *Id.* Dr. Flexman noted further that obsessive thinking concerning somatic or other psychological problems was out of proportion with reality and somatization was present. *Id.* Dr. Flexman identified Plaintiff's diagnoses as undifferentiated somatoform disorder, malingering, antisocial personality disorder, and borderline intellectual functioning; he assigned Plaintiff a GAF of 55. *Id.* Dr. Flexman opined further that Plaintiff's abilities to understand, remember, and carry out short, simple instructions and to make judgments for simple work-related decisions were slightly impaired and that his abilities to maintain sustained attention and concentration, interact with others, and respond appropriately to work pressures in a normal work setting were moderately impaired. *Id.*

An October 24, 2004, pulmonary function study revealed a moderate degree of restrictive and mild degree of obstructive lung disease with mild bronchodilator effect, if at all. (Tr. 301-12).

Plaintiff participated in a one week vocational evaluation at Goodwill Industries in November, 2004. (Tr. 340-52). The report of that evaluation reveals that Plaintiff did not participate each day nor did he complete full days of the evaluation. *Id.* The evaluators identified Plaintiff's functional limitations as asthma, hypertension, gout, hepatitis C, obesity, and depression. *Id.* The evaluators opined that based on the results of the vocational evaluation, it did not appear that Plaintiff was employable. *Id.* The evaluators noted that Plaintiff reported that he needed to take

care of his health concerns prior to seeking employment and that his primary concern was to obtain SSI. *Id.*

The record contains Plaintiff's treatment notes from the Cassano Community Health Center dated August 12, 2004, through July 8, 2005. (Tr. 356-80; 450-51). Those records reveal that Plaintiff received general medical care at that facility for various complaints and conditions including cough, cardiomyopathy, flu, and diarrhea. *Id.*

Plaintiff was hospitalized May 16-20, 2005, after presenting to the emergency room seeking detoxification. (Tr. 388-410). Plaintiff was treated for opiate dependence, opiate withdrawal syndrome, hypertension, and a fracture of his right fifth metatarsal base. *Id.*

The transcript contains Plaintiff's treatment notes from Samaritan Behavioral Health dated September 2, 2004, through April 11, 2005. (Tr. 411-39). The evaluator's notes reveal that when Plaintiff was initially evaluated, it was noted that he was referred for treatment of depression and anxiety, has been a drug-user since the 1970s, has been in prison most of his adult life, has never worked outside prison, and has been depressed since childhood. *Id.* The evaluator also noted that Plaintiff was alert, oriented, and had poor memory and concentration. *Id.* Plaintiff's diagnoses were identified as major depression, recurrent, moderate, and sedative and hypnotic dependence in sustained full remission; he was assigned a GAF of 51. *Id.* Over time, Plaintiff's attendance with his therapist was sporadic although he tended to attend psychiatric appointments. *Id.*

Plaintiff was hospitalized May 16 through May 20, 2005, for treatment of opiate dependence. (Tr. 441-49). At the time Plaintiff was admitted, it was noted that he had a ten-year history of abstinence from heroin ending three months prior to the admission, that he was currently using three to eight-tenths of heroin intravenously a day, and his toxicology screen was positive for

7

opiate and cocaine metabolites. *Id.* Plaintiff was treated on the detoxification unit with medication and was discharged with advice to follow-up at Crisis Care for outpatient chemical dependency referral. *Id.*

The transcript contains a copy of Plaintiff's treatment notes from University Medicine and Pediatrics at One Elizabeth Place dated August 23, 2004, through July 29, 2005. (Tr. 452-69). Those records reveal that Plaintiff received treatment at that facility for various medical conditions and complaints including hypertension, asthma, GERD, gout, and drug abuse. *Id.*

The transcript contains a copy of Plaintiff's treatment notes from Dr. O'Donnell dated September 28, 2004, through October 12, 2007. (Tr. 470-83; 497-500; 506-42). Those records indicate that Plaintiff received treatment from Dr. O'Donnell for various medical conditions and complaints including upper respiratory infection, hypertension, chest pain, sinusitis, dermatitis, bronchitis, gastroenteritis, and hyperlipidemia. *Id.*

Dr. O'Donnell reported on March 1, 2007, that Plaintiff's diagnoses were asthma, hypertension, hepatitis C, gout, dermatitis, arthritis, hyperlipidemia, and depression, that his abilities to stand/walk and sit were affected by his impairments, that he was able to "lift/carry up to twenty pounds frequently and up to ten pounds occasionally" [sic], and that he was unemployable. (Tr. 503-04).

On November 27, 2007, Deborah Nagel, a social worker from DayMont Behavioral Health Care reported that Plaintiff was actively receiving mental health services at DayMont, had an initial assessment session on November 1, 2007, continued to receive individual therapy on a biweekly basis, and that he must be seen six times before he could be referred to medical services for evaluation. (Tr. 501).

8

Plaintiff was hospitalized February 2 through 8, 2008, for treatment of escalating manic behavior. (Tr. 547-73). At the time of his admission, it was noted that Plaintiff had experienced five to seven days of increasingly manic behavior including an elevated and irritable mood, grandiosity, decreased need for sleep, increased talkativeness, and flight of ideas, and that in the emergency department he began yelling that he was "dying and needed to be evaluated". *Id.* It was also noted at the time of his admission that although Plaintiff initially denied any recent drug use his drug screen was positive for opiates and marijuana, that he later admitted that he bought methadone off the street stating, "I pay cash", that he was "kicked out" of Project C.U.R.E. several months prior to admission, and that he used approximately 5 mg. of methadone per day. *Id.* During that hospitalization, medical consults were obtained regarding Plaintiff's multiple medical issues including acute renal failure, hypertension, sinusitis, COPD, gastroesophageal reflux disorder, and his history of DVT, as well as his dental issues. *Id.* Plaintiff was treated with medication during his hospitalization and was discharged on the fifth hospital day. *Id.* At the time of discharge, it was noted that Plaintiff was alert and oriented, pleasant and cooperative, had normal speech, clear articulation, and an absence of pressured speech, and that his thought processes were normal. *Id.* It was also noted that Plaintiff's affect was euthymic, full range, congruent, and non-labile, and that his insight and judgment were intact. *Id.* Plaintiff's discharge diagnoses were identified as bipolar disorder, most recent episode manic, opiate abuse versus dependency, and nicotine dependency and he was assigned a GAF of 60. *Id.*

Plaintiff alleges in his Statement of Errors that the Commissioner erred by failing to find that he his disabled pursuant to the Grids and by improperly evaluating Dr. O'Donnell's opinion. (Doc. 8).

9

Where a claimant suffers from an impairment limiting only his strength, the Commissioner can satisfy his burden, without considering direct evidence of the availability of jobs the particular claimant can perform, through reference to the Grid. *Abbott v. Sullivan,* 905 F.2d 918, 926 (6th Cir. 1990). The Grid aids the Commissioner in determining disability claims by allowing "administrative notice" to be taken of the existence of jobs in the national economy that those with particular combinations of the four statutory factors are capable of performing. *Id, citing, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 529 (6th Cir. 1981), *cert. denied,* 461 U.S. 975 (1983). The Grid is composed of sections numbered 201.01 through 203.31, each of which specifies whether a claimant with a particular combination of the four factors listed in the Act will be found disabled or not disabled. *See, Id.* The Grid takes into account only a claimant's exertional impairment; that is, one which manifests itself by limitations in meeting the strength requirements of jobs. *Abbott, supra.* (citation omitted). Where a claimant suffers from an impairment that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, rote application of the Grid is inappropriate. *Id.* (citations omitted). In the case of an individual who suffers from both exertional and nonexertional impairments, where the Grid does not yield a finding of "disabled" when the exertional impairments are considered alone, the Grid may be employed as a "framework" to provide guidance. *Id*. (citations omitted). With respect to exertional impairments, the correct disability decision is found by locating the claimant's specific vocational profile within the Grid sections. *See,* 20 C.F.R. Pt. 404, Subpt. P, App. 2 §200.00.

The primary issue with respect to Plaintiff's Grid argument is his level of education. For purposes of this Error, Plaintiff accepts the Commissioner's finding that he is capable of performing a reduced range of medium work. (Doc. 8 at 7). Plaintiff's position is that if an

10

individual is of either advanced age or closely approaching retirement age, is limited to medium work, and has a limited education (or marginal education if closely approaching retirement age), and has no previous work experience (or unskilled work experience if approaching retirement age and marginal education), then sections 203.02 and 203.10 direct a conclusion of "disabled". Plaintiff's position is that he has a limited education and has not performed substantial gainful activity in the relevant time period and is therefore disable under the Grids.

In addressing the question of Plaintiff's education, Judge McNichols noted that Plaintiff had given multiple inconsistent reports as to his education in that he had testified he had a tenth grade education, told a counselor at county mental health services that he had a GED, and that he reported ninth to eleventh grade educations to various other sources. (Tr. 37, ¶ 7). Judge McNichols therefore determined that Plaintiff had *either* a high school education *or* a limited education. *Id.* Indeed, Plaintiff seems to concede that he does have at least a limited education. (Doc. 8 at 8). Nevertheless, it was not error for Judge McNichols to fail to specifically determine Plaintiff's level of education because he (Judge McNichols) used several sections of the Grid as a framework for deciding coupled with a VE's testimony to determine there is a significant number of jobs in the economy that Plaintiff is capable of performing. Specifically, Judge McNichols used sections 203.14, 203.06, 203.11, and 203.03 which refer to different levels of education and none of those sections directed a conclusion of disabled.

Plaintiff also argues that the Commissioner determination with respect to his past relevant work experience was insufficient.

Past relevant work is work that an individual did in the past fifteen years, that was substantial gainful activity, and that lasted long enough for the individual to learn the job. 20 C.F.R.

11

§ 416.960.

Plaintiff testified that in 1994 he worked at a facility where the business was recycling paint sludge, that he worked in the maintenance department, that he worked there for about a year, and that he was familiar with the job. The VE testified at the hearing that the job Plaintiff performed in 1994 was medium and unskilled.[1] (Tr. 605). Judge McNichols determined that Plaintiff had past relevant work earnings of $7,320.00, in 1994, over $500.00 a month but that he was unable to perform that work. (Tr. 36-37).

Plaintiff's argument seems to be that his job in 1994 was not work experience for purposes of applying the Grid. However, Plaintiff has not offered any evidence which refutes Judge McNichols' finding. Plaintiff's 1994 work was within the fifteen-year and earnings requirements to be considered substantial gainful activity and the Commissioner did not err in that regard.

Plaintiff argues next that the Commissioner erred by failing to give Dr. O'Donnell's opinion controlling weight.

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

---

[1] Although the VE testified that the exertion level of Plaintiff's past relevant work was medium, Judge McNichols determined it was heavy. (Tr. 37). However, assuming error, it is harmless error in that Judge McNichols determined that Plaintiff is not capable of performing his past relevant work and proceeded through the remaining steps of the sequential evaluation process.

>evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[2] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R.

---

[2] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

13

§404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakely,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakely, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. O'Donnell's opinion that Plaintiff is unemployable, Judge McNichols noted that Dr. O'Donnell treated Plaintiff only intermittently, that he provided few, if any objective clinical findings to support his opinion, that his clinical notes were essentially a recitation of Plaintiff's subjective complaints, and that his opinion was inconsistent with other evidence of record.

First, when Dr. O'Donnell opined that Plaintiff is unemployable, he described only Plaintiff's limitations with respect to lifting and carrying and, as essentially noted above, his opinion on that issue is internally inconsistent in that he reported that Plaintiff was able to lift up to twenty pounds *frequently* and up to ten pounds *occasionally*. In addition, Dr. O'Donnell provided absolutely no "observations or medical evidence" to support his opinion. Further, a review of Dr. O'Donnell's office notes reveals that those notes are essentially lists of diagnoses and recitations of Plaintiff's complaints and that they contain few objective clinical findings.

In addition, Dr. O'Donnell's opinion is inconsistent with the generally mild clinical finding Dr. Danopulos reported as well as with the opinions of the reviewing physicians. (Tr. 313-20). Finally, Dr. O'Donnell's opinion that Plaintiff is unemployable is inconsistent with Plaintiff's suboptimal response and poor effort during the evaluation Dr. Flexman performed, with Dr. Flexman's opinion that Plaintiff's diagnoses include malingering, and with Plaintiff's failure to fully participate in the vocational evaluation at Goodwill Industries.

Under these facts, the Commissioner did not err by failing to give Dr. O'Donnell's opinion controlling weight.

Finally, Plaintiff essentially argues that the Commissioner erred by failing to consider his impairments in combination.

The Act requires the Commissioner to consider the combined effects of impairments that individually may be nonsevere, but which in combination may constitute a medically severe impairment or otherwise evince a claimant's disability. *Foster v. Bowen,* 853 F.2d 483, 490 (6th Cir. 1988) (citation omitted). A disability may result from multiple impairments, no one of which alone would constitute a full disability. *Loy v. Secretary of Health and Human Services,* 901 F.2d 1306

(6th Cir. 1990). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a "combination of impairments" in finding that the plaintiff does not meet the Listings. *Id.* (citation omitted).

A review of Judge McNichols' opinion reveals that he consistently referred to Plaintiff's impairments in the plural. *See, e.g.,* Tr. 24, 28, 30, 36. In addition, Judge McNichols specifically referred to Plaintiff's "combination of impairments" in finding that he does not satisfy the Listings. (Tr. 30, ¶ 3). Under these facts, the Commissioner did not err by failing to consider Plaintiff's impairments in combination.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 27, 2010.

                 *s/ Michael R. Merz*
                 United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).